The final case for argument this morning is 25-1617 Shenzhen Jisu Technology Co., Ltd. Good morning. Good morning. May it please the Court, I am Jie Li, Counsel for Plaintiff Appellant, Shenzhen Jisu Technology. This case began as a dispute between Jisu and a single defendant, Zhaodi. After five months of full briefing in November 2024, the district court found a strong likelihood of design patent infringement, far from no likelihood in its own words. It might be of interest just in terms of time. We've read the briefs. We know what happened. So why don't you begin with your challenge to what the district court did. Yes, what do we honor? So the February 2025 order is the order that we challenge. This court did not even reach the merit question. The same defendants before this court today were present in, aware of, and actively participating in those earlier proceedings. They provided the one-over patent to Zhaodi 35 days before the patent even issued. They are the inventor, manufacturer, and retail aliases of the same infringing product. They should be stopped from a third bet at this appeal. But even if this court reaches the merits, the error in February 2025 order is unmistakable. Okay, well, let's stop you there. So is this your collateral estoppel argument? We have that argument, yes. Okay, but how does collateral estoppel apply if there's been no final judgment? District courts are allowed to change their minds. They change their minds all the time. If it's before final judgment, why is there a collateral estoppel issue? Yes, Your Honor. So the parties argue that the determination was not final, but they concede in the response brief, page 8, that a preliminary injunction decision may be sufficiently final to be given preclusive effect in certain circumstances. This is one of those circumstances. The December 10, 2024 hearing was not a tentative estimate on incomplete record. It was a dedicated full adversarial proceeding on the sole issue of the 104 patent. The court's bench ruling was deliberate. It understood the argument, addressed their presumption of validity point, and made a firm decision. Both parties subject to appeal. So under Miller's ruling and the recent factors, this is preclusive. Moreover, the February 2025 order appeared to change the result only because defendants reframed themselves as authorized users. But my point is it's not a result. It may be what we could call a result loosely, but there was no final decision, final judgment by the district court. And until that happens, district courts are free, are they not, to change their position. Your Honor, they may. But this preliminary injunction decision, it's not decided on incomplete record. It was not a tentative estimate of what's going to happen. It was fully briefed. District courts can always change their preliminary injunctions. I mean, if the parties come back and say, we have additional information. We want you to lift the injunction. That happens all the time. There's no collateral stoppable effect. It's not a permanent injunction. So why can't the district court say, look, I granted this based on the information I had at the time. I have new information. I'm going to change my mind. Your Honor, the district court mentioned his or her mind. But the reason district court changed his mind is not correct. The district court judge applied the wrong legal analysis of patent infringement. It should apply the ordinary observer test. But instead, the district judge used the 104 patent as like prerequisite requirement. It required us to make the 104 patent invalid for us to prove the infringement analysis. And that's the error we are contesting. Could you turn to the merits? The November 2024 order is the correct analysis of the district court. It's a six-page written opinion. Why is it? So your argument is that the district court's order dissolving the injunction was based on using an incorrect framework, right? Yes. Do I understand that correctly? Okay. So, and that a different framework had been used, like the proper framework had been used in the earlier order. Why is it in the context of design patents, why is it that the district court is allowed to do what it did here? In other words, because we don't have, do you have any case law? Let me back up. Do you have any case law that holds that for design patents, something, you can't, if one patent, if one, if a design is practicing a different patent than it per se, it doesn't practice the other patent? Your Honor, that's a separate issue of patent does not implicate a finding of non-infringement. National Presto says so. Many federal circuit laws say so. I know. I understand. I understand your argument. That case you just cited, I think, is a utility patent case, right? But the reasoning is still the same. National Presto is a design patent case. And it holds that you can't equate, you can't use whether a patent practices a particular, whether a design practices a particular patent, you can't rely on that to find non-infringement? That's correct, Your Honor. Or a likelihood of non-infringement? That's correct, Your Honor. Is that what it says? Because I don't know what the page number is. Yeah, what are you relying on? But there's a lot here, and there are a lot of words, and you cite part of it. But the end of the paragraph that you cite in your brief, I think twice, says that whether a modified device is within the scope of a prior patent, literally or by equivalence, depends on the facts. This fact of a separate patentability is relevant and is entitled to due weight. However, West Bend's statement that there cannot be infringement as a matter of law is incorrect. How does that support your position? Yes, Your Honor. Appellee's also characteristic, the federal order was simply giving due weight to the one-fourth patent. But the order itself says otherwise. In Appendix 3, the district court holds that plaintiff, quote, must also be prepared to show that the one-fourth patent is invalid as anticipated, unquote. Our reply brief correctly identified at page 13 that the district court found one-fourth patent, quote, necessarily conclusive, unquote, and required plaintiff to overcome, quote, statutory presumption, unquote. Those are not the words of a court ruling factor. Okay. Can I take you back a little to where, again, I understand you raised the collateral estoppel argument, but I'm not clear with the argument you were raising with respect to the merits of the district court's decision. Because I understood most, if most, maybe all, I'm asking you, of what you were arguing in blue had to do with the use of the obviousness analysis. Yes, Your Honor. And, in fact, on page 9 of gray, you make clear, plaintiff appellant has not contested the substantial similarity between the design patent infringement under the ordinary observer test and anticipation under 102. So you go on to talk about you're contesting the 103. I'm confused. Is that correct? That's correct, Your Honor. Okay. I'm just confused because the district court appears to have relied on anticipation, 102, and it seems like you say you're not challenging the 102 reliance, you're challenging the 103 reliance. Your Honor, actually, let me back up. We're challenging both. So we think 103 is the operative analysis of the examiner. The reason being that, so the 102 question asks whether the two designs are identical or not. So if the two designs are not identical, it falls into 103 territory. And defendants always, they claim that the two designs are not identical. So if the two designs are not identical, it passes novelty requirement of the 102. Then it goes to 103 question. The 103 question asks a different question. It's a designer of ordinary skill. It's not the designer, it's not ordinary observer, a regular purchaser. So it's a different question. Additionally, the examiner, there's no, we don't know the methodology of the examiner. We don't know whether the examiner considered 102 or 103, or both will issue the patent on which provision. And that unknown in itself is fatal. We cannot say, oh, because it's unknown. So we think, we presume that the examiner found non-infringement, where the designs are not identical. The examiner resolved the issue under Section 102. We cannot assume that. Additionally, even accepting 102, Section 102, the examiner used a different methodology than the court for infringement analysis. When the examiner considers two designs, the comparison was between patent drawing versus patent drawing. And also, the examiner has to consider all features, including functional features and ornamental features. But when the court considers the infringement analysis, the comparison was between patent drawing versus the accused product. And you have to strip out the functional element of the accused product. I'm just trying to see what issues were preserved and raised in the briefing here. And I read you the statement in the reply brief, and it seems like that's consistent with what you were arguing in blue. Not a 102 or whether the design patent infringed under ordinary observer, but yet, and then goes on to talk about what you said here, I guess, similar to 103 is really the gravamen of your complaint here and your challenge. Yes, Your Honor. And also, I would like to mention that the folding access is kind of the core of defense product distinction. But how a firm folds is the functional element. It's mechanical. It's not an ornamental element. So when the district court judge initially, when he did the ordinary observer analysis, he needs to strip out that folding access functional element of it. But when the designer issued the patent, the designer considered that element. Does it matter where the mechanical elements are, that the pill-shaped box, that in one design it's on the sides and in the other design it's in the front and back, regardless of whether it folds? That's my question to you. Do you understand my question? If Your Honor can rephrase. Sure. In looking at the similarity of the designs using the ordinary observer test for infringement, does it matter that, you know, what weight would be given? Are you saying there should be no weight given to the fact that in one design, the arms that ultimately result in the folding are on the sides, and in the other design they're from front to back? Are you saying that should have been ignored? Yes, Your Honor, because that's a functional element. When the court conducts infringement analysis, you have to strip out that functional element because design patent only covers ornamental design, ornamental element of the product, of the drawing, not the functional element of it. What about the ornamental aspect of that portion of the device? So that's up to the district court judge's discretion, and when he exercised that discretion before the lawful patent, he saw the accused product still substantially similar to our design, to our patent. So to ordinary observer, I thought he already made that. I can make sure I understand your position, what you're arguing on appeal. Your view is that when he applied the typical infringement test for ordinary observer, he treated that as functional and he really focused on the pill-like ornamental look of the design and the similarity there. But then in his second order, the one that you're challenging, he did not look at the ordinary observer test, nor did he subtract out any elements of the design. Correct, Your Honor. There is no mention of ordinary observer test in his second order. There is no mention of prior art at all. The core issue he mentioned is basically saying that because they have a 104 patent issued, then if you have to show that, then you have to prove the 104 patent is invalid to show your infringement analysis. So basically the district court judge treated the 104 patent as a prerequisite threshold. Once they have the new patent covers their product, they're not infringing. But that's not the law here. You still have to conduct the ordinary observer test. You can wait as a factor, as evidence. That's fine. But you cannot just ignore the ordinary observer test totally in the second order. I agree that the framework used here is I've never seen it used before. Do you want to talk about why it shouldn't be something that's used? Why not? Why can't it be used if it's a reasonable proxy? Three reasons. First, as I explained before, I think 103 is the operative analysis. So probably the examiner didn't even consider 102. And also we do not know the examiner's methodology when the examiner issued the patent. There is no written report of it. And second, even under Section 102, the anticipation session, the examiner's methodology is different from how the court would conduct the analysis. And third, a separate issue patent does not implicate a finding of non-infringement. That's what national presto holds. And third, the district court judge should not even give any deference to the examiner's decision because we're not challenging their validity or invalidity of the patent. So the district court should not give any deference. Even if any deference is given, it should be minimal because the district court's opinion happened before the examiner's decision. First thing. Second, the district court judge is also a qualified government actor, fully heard both sides' argument and made an informed decision. It was explicit analysis. Well, the examiner's decision was implicit. And the result would be your— You're a little bit in your collateral stopper movement, but okay. We'll restore a little rebuttal. You're beyond your time. Okay, thank you. So let's get on the other side. Thank you, Honor. Good morning, Honors. Good afternoon now. Adam Ravanchik on behalf of the defendants. May it please the Court. The panel should affirm the lower court's ruling because there was no abusive discretion in its decision to vacate the previously entered preliminary injunction order. There's no clear error of judgment. There's no error of law or erroneous factual finding. Why is the framework okay? I mean, it seems kind of weird to me. You have to prove that the later-issued patent is invalid if you want to show that your design, that there is infringement. I don't think the lower court is getting beyond what is consistent with all— I think all of the case law that's been cited in what appellant's counsel is really arguing. In Judge Alonzo, the lower court's ruling, what he— Are you saying there's case law that says that this is the framework to use? Because I'm not aware of any that says that this is the framework to use. No, Your Honor. What I'm saying is what the lower court did isn't in contravention of any case law that has been put in front of the court. So you're saying that while there's no case law to support what he did, there's no case law that says that he can't do what he did. I don't know if I would go—I don't know if I would say that very specifically. Fundamentally, what Judge Alonzo did at the lower court was, in light of the 104 patent issuing, which is presumed valid, the court owes its discretion in consideration of the examiner's finding that, as a matter of fact, the design claimed under the 104 patent is novel over the design illustrated in the 982 patent and is non-obvious over that design along with all of the other cited references. So what the court is doing is saying, well, previously the 104 patent wasn't issued. That new presumption didn't exist. But now, when it's discretion, collateral estoppel doesn't apply for the reasons Your Honors had discussed previously. The court is entitled to revisit that conclusion and consistent with international seaway if the— How do we know that the products at issue are coextensive with the later patent? Doesn't that matter? The later patent could issue, but unless the products are coextensive with that, it makes no difference to the infringement analysis of the products as compared to the earlier patent. Well, throughout the litigation, as raised by the defendant Jody initially before the remaining appellees showed up, the contention was the accused product was that that was eventually covered. It was the same item that was covered under the 104 patent. In fact, Jody's supplier was Shenzhen Miami Electronic Technology Company Limited, which is the applicant and owner of the 104 patent. So the defendants may or at least proffered the theory that the products at issue that are accused of infringing the earlier patent are coextensive with the design of the later patent. That's correct, Your Honor. And I don't know if that was disputed in the briefs, exactly. I don't think the parties really got to the point where the accused products are something that was different. It's important, right, whether it's disputed or not, if you're going to use this shortcut framework. Well, I agree that it is. But what I'm saying is that there wasn't a dispute that the accused products were not those that are depicted as depicted in the 104 patent that issued later. That they are identical to them? You're saying it's undisputed? I'm sorry, I'm not following you. Yes, Your Honor. Yes, Your Honor. The appellee's position is that their accused product that they have been selling is that which is covered by the 104 patent and is illustrated. Okay. And that was not challenged, to your knowledge? I don't see that being challenged. By the design patent owner. Okay. Yes. To my understanding of To Judge Stoll's question about the framework, I mean, the threshold issue in our experience in patent law is when the first question, maybe the first and the last question you asked is would an ordinary observer see the substantially similar, whatever the test is. There's none of that reference in this opinion. I mean, he talked about it earlier in the other proceedings, but shouldn't he have started with that at least? Well, I think what he's doing is he's invoking the issuance of the 102 patent that is presumed valid just like the 982 patent is presumed valid. And therefore, as the examiner found for the 104 patent, it is not anticipated by the 982 patent. And if it's not anticipated, it's not substantially similar. So that's the bridge. But my concern is that I don't see any cases from any courts, including our court, that bless that as the test to be used for whether there's infringement or even a likelihood of infringement. I understand the logic behind it. I'm not second-guessing that. I'm just bothered by the fact, especially here, there's an earlier opinion from the district court judge that uses the proper framework, the one that we've been using for years, and says that there is a likelihood of success. And then this other framework, which is undoubtedly not the one that's been blessed by this court, is used. And there's an alternate conclusion. I understand there's a change in time, and I'm not relying on, you know, I'm not saying the district court judge can't change his mind. Of course he can. I'm just concerned about this case and future cases, district court judges using the wrong standard. And so how do you address that? Because it seems to me that the proper analysis should be done when we're talking about, you know, especially these fast, fast litigations, these Schedule A litigations. Shouldn't these types, shouldn't the proper framework be used? Again, Your Honor, I think the lower court is still using that same framework, the appropriate framework that this court outlined in International Seat Way. I don't see it anywhere in the opinion. How do you know that that framework is still being used? Well, on page three of the appendix, where the court is referencing plaintiff's fuzzy argument, he says it's nonsense. There is no difference. It has been well-established for over a century. Which paragraph are you looking at? I'm sorry. I'm sorry. Near the bottom on appendix page three. It has been well-established for over a century that the same test must be used for both infringement and anticipation. Therefore, that which infringes, if later, would anticipate, if earlier. This is true for both utility patents and design patents. Yeah, but you agree. There's nothing here where it's like I'm looking at one design, I'm looking at the other. From the perspective of an ordinary observer, I am subtracting out the functional elements, and I'm looking to see whether there is infringement, right? Or whether, from the perspective of an ordinary observer, these are so similar that one might mistake one for the other. That's the test. Right? Yes. You admit that test is not used here. I just want to make sure we can agree that it's not expressly stated on pages A2 through A4. I would agree, Your Honor, that the lower court's opinion doesn't, for example, have a section where they break out that rule. That being said, the very strong implication is that because the 104 patent did issue and is presumed valid, there isn't a substantial similarity between the design. That is, because it issued, it's presumably valid. You're saying this is a reasonable alternative test for determining whether there's design patent infringement or not. I think that's what you're saying. I think it's reasonable for a district court to find that persuasive as to whether or not the plaintiff appellant had met its burden under Rule 65 to enjoy the benefits of a preliminary injunction. This isn't a final determination as to whether or not the accused items are infringing. That hasn't happened. Does it make any difference that using the ordinary observer test, the district came up with a different conclusion earlier and now is using this shortcut to make the determination of likelihood of success? If anything, I think that makes it even more difficult. The court is giving weight to various considerations. At the time when the preliminary injunction order, when the plaintiff appellant's motion for preliminary injunction was first filed, the 104 patent hadn't issued. We did respond with an argument. The court entered a preliminary, we as in the defendant Joudy, which is the first defendant, responded with an argument. The court entered a preliminary injunction over that. Joudy filed a motion to reconsider. That was denied. My problem is this. Don't get me wrong. I'm not weighing in on the factual question here. That is not what I'm trying to do. My concern is the use of a framework that's different than the proper legal framework that could have been used to arrive at the same result. I hope you understand my concern. I'm just letting you know to see if you have anything else you want to say about why it's okay for the district court to use this shortcut and say, because the accused ornamental design is in a different patent issued by the United States Patent Office, I can conclude that there is no likelihood of infringement here. What if the converse is true? Let's say that during someone applies for a design patent and the United States Patent Office says you're not entitled to it. It's not novel. It's not obvious. Are we then going to say that there's a likelihood of infringement? Should we use that as our framework? For making a determination of ultimate liability, perhaps not. I think the lower court is entitled to be persuaded by events which are transpiring. The 104 patent being issued is a material change to the facts of the case. There's no narrative in what he's talking about. Is there a why? Why was it the game changer? Because did he look at that and look at the accused device or the accused product and say, they're identical? There's no analysis that even coincides with the ordinary observer test. Is there or is there? That was argued in the brief. The opinion doesn't, I can see the opinion doesn't break out that argument in an outline fashion. But as soon as the 104 patent issues, it almost sanctifies what the appellees, defendants had been arguing about at the time. That this is different. And as soon as the patent issues, well then actually the examiner, who we owe a great deference to, himself, Examiner Yoon, determined that it's not anticipated, therefore it isn't substantially similar, therefore it's not infringing. Why isn't it that the district court should have done both? Could have made the same discussion, had the same discussion that is in its opinion, but also say, and in addition, I've considered the ordinary observer test. It's traditionally used. And I'm convinced in light of this new evidence and the issuance of the patent, that there is no likelihood of success. I think that what, I believe that consideration is rolled up in the invocation of the effect the issuance of the 104 patent has on the overall infringement analysis. So you would say a district court judge doesn't have to do the side-by-side comparison. They can just say, oh, another patent covers this design. Well, those matters, that material was before the court in the briefings. In the opinion, I agree. Yeah, but I'm reviewing this opinion for abuse of discretion. I can't assume that the district court used the proper test when it's not presented before me. Your Honor, I would say that it's within the court's discretion to decide what facts are persuasive to it to arrive at the conclusion. The court isn't making a final determination. Conversely, as a counterexample, if this was after a grant of a denial of a summary judgment motion, that might be one thing. But preliminary injunctions are tentative. All of the relief is preliminary. It's a likelihood of success. As your court has discussed previously, the court can revisit it if there are new circumstances. Nothing stops the appellant plaintiff later on in the case from later on attempting to reapply injunctive relief under Rule 65 or trying to invalidate the 104 patent. That can happen later. What appellee's position is the lower court is within its discretion to make these conclusions based off of what is before it, keeping in mind overall that it's ultimately the appellant plaintiff's obligation to meet its evidentiary burden to enjoy the benefits of the extraordinary relief under Rule 65. Thank you.  It's not a court's discretion to use a wrong legal framework. The second order imposed legal requirement that does not exist in federal circuit law. Your Honor, consider what appellee's rule would mean for every design patent holder. Any accused infringer who obtained a patent on the accused product where a third patent was cited during prosecution would be automatically immune from infringement. No invalidity proceeding, no judicial comparison. The patent holder's infringement claim is dead by the accused infringer's prosecution success. The federal circuit has expressly and repeatedly rejected this result in national press call. Appellee's position cannot overrule all of this. So it's our position that the court should instruct the lower court to use the correct legal framework to do their analysis. Thank you.